## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**DOUG STEWART**

        **Plaintiff,**

                                    **Case No. 3:12-cv-199**

**-v-**                                      **Judge Thomas M. Rose**

**KETTERING HEALTH NETWORK, et al.,**

        **Defendants.**

_____

### ENTRY AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. #25) AND TERMINATING THIS CASE
_____

Now before the Court is a Motion for Summary Judgment brought by Defendants Kettering Health Network ("Kettering") and Grandview Medical Center ("Grandview"). (Doc. #25.) This motion is now fully briefed and ripe for decision.

This matter arises out of the employment and subsequent termination of Plaintiff Doug Stewart ("Stewart") by Grandview. Stewart brings four (4) Counts in his First Amended Complaint ("FAC"). (Doc. #1-1.) Count I is for age discrimination (termination) in violation of Ohio Rev. Code § 4112.14 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Count II is for retaliation in violation of Ohio Rev. Code § 4112.02 and the ADEA. Count III is for intentional and/or reckless infliction of emotional distress and Count IV is for punitive damages.

A Relevant Factual Background will first be set forth. This will be followed by the Standard of Review for motions for summary judgment and an analysis of Defendants' Motion.

### RELEVANT FACTUAL BACKGROUND

Stewart was hired by Grandview in June of 2003 as a Police Officer II. (Affidavit of

Doug Stewart ("Stewart Aff.") ¶ 2 May 20, 2013; Deposition of David W. Miller ("Miller Dep.") 23 Feb. 7, 2013.) When Stewart was hired by Grandview, Roger Harris was the police chief. (Id.) In the Summer of 2009, Roger Harris retired and was replaced as chief by David Miller ("Miller"). (Id.)

In the Fall of 2009, Grandview was commissioned as a police department. (Deposition of Richard Andy Sullivan ("Sullivan Dep.") 25 Feb. 7, 2013.) As a result, security officers, including Stewart, were required to complete the Ohio Peace Officer Training Academy ("OPOTA"). (Miller Dep. 23.) At the time, only two Grandview police officers were not OPOTA-certified: Jimmie Whittle and Stewart. (Stewart Aff. ¶ 3.)

**OPOTA Training**

According to Miller, OPOTA training is "not easy" and it "takes a heck of an effort to get through the police academy, even for a young person." (Miller Dep. 27.) To pass OPOTA, an officer has to run 1.5 miles in a prescribed time, has to do a prescribed number of push-ups and sit-ups and has to complete a variety of training courses. (Id.) Part of the OPOTA training education involves instruction on the use of force. (Id. at 29.)

Stewart successfully completed the OPOTA training. (Stewart Aff. ¶ 4.) He was the oldest individual, at age 59, to ever do so. (Deposition of Doug Stewart ("Stewart Dep.") 27 Feb. 5, 2013; Stewart Aff. ¶ 4.)

An OPOTA graduation ceremony was held in February of 2010. (Stewart Aff. ¶ 4.) Stewart was asked to speak at the graduation ceremony on the graduating class's behalf. (Id.)

Stewart was the only Grandview officer to graduate at the ceremony. (Id.) Miller and Captain Michael Molchan ("Molchan") were in attendance. (Id.)

**The Incident**

On February 22, 2011, Stewart arrived at the hospital after a nine-day vacation. (Stewart Dep. 81.) He began this shift at 14:00 hours "fresh" and "ready to roll." (Id.)

At the start of this shift, Stewart checked in with the police dispatcher and learned that Officer Mardy White ("White") was having trouble with a patient in exam room 10, so he went to assist White. (Id. at 83.) Exam room 10 is one of the rooms that is padded for individuals that are out of control or that may harm themselves. (Id. at 84.)

When Stewart arrived, White was standing outside of the room and the patient had his underwear and a tee shirt on and was "kicking up sand, cussing, carrying on." (Id.) The patient had been brought to Grandview on a "pink slip." (Id. 84-85.) A "pink slip" is a temporary hold for psychiatric evaluation. (Id. at 85.)

Per hospital protocol, Stewart and White needed to check the patient for weapons and Dr. Hunter, an emergency room physician, asked them to get the patient completely undressed and into a hospital gown. (Stewart Dep. 89-91.) The patient resisted when Stewart and White tried to undress him. (Id. at 92-93.) When White tried to pull the patient's shirt off of him, according to Stewart, "[t]he fight was on." (Id. at 93.)

Following a struggle that involved punches from the patient, Stewart and White, Stewart used a Taser on the patient. (Id. at 96.) The patient appeared unaffected by the Taser, but shortly thereafter Stewart and White were able to tackle the patient to the floor and handcuff him with his hands in front of his body. (Id. at 100-06.)

The door to the exam room was open during the incident. (Id. at 99.) Stewart did not see anyone in the hall but medical staff came rushing in all of a sudden. (Id.) Stewart recalls Dr.

-3-

Hunter and Sergeant Jones ("Jones"), among others, coming into the room. (Id. at 115-16.) At this point, what happens to the patient is disputed.

Jones, Dr. Hunter and Dr. Fish testified that Stewart kicked the restrained patient in the head. ( Exhibit G to Stewart Dep.; Declaration of Robert L. Hunter, D.O. ("Hunter Decl.") ¶ 4 Apr. 8, 2013; Declaration of Boyce K. Fish, D.O. ("Fish Decl.") ¶ 4 Apr. 12, 2013.) Jones described the event in his report to Miller. (Exhibit G to Stewart Dep.) "…Officer D. Stewart then took what appeared to be his right foot and moved it to the patients face in a quick motion. It appeared that his foot had struck the patient in the area of his forehead and nose…." Jones also reported that Doctors Hunter and Fish confirmed that they saw Stewart kick the patient's head. (Id.)

Stewart testifies to a different story. According to Stewart, the patient was spitting blood on everybody and everything. (Stewart Dep. 118.) Dr. Hunter, in an effort to redirect the patient's head to avoid possible disease from the patient's blood, pushed his foot on the patient's head. (Id. at 117-18.) Stewart told Dr. Hunter that "we" had the situation under control and he needed to remove his foot from the patient's head. (Stewart Aff. ¶ 7.) Dr. Hunter refused. (Id.) Stewart then placed his foot on the patient's head but he says he had no pressure on the patient's head. (Stewart Dep. 120.) When the patient calmed down, Stewart removed his foot and Stewart also removed Dr. Hunter's foot. (Id. at 122.) During the follow-up investigation, Stewart denied kicking the patient. (Declaration of Michael Molchan ("Molchan Decl.) ¶ 8 Apr. 19, 2013.)

White's incident report mentions nothing of Stewart kicking the patient's head. (Exhibit C to Stewart Dep.) Dr. Fish's handwritten statement made shortly after the incident says nothing about Stewart kicking the patient's head. (Exhibit E to Stewart Dep.) Dr. Hunter's handwritten

statement made shortly after the incident says nothing about Stewart kicking the patient's head. (Exhibit 1 to Stewart Aff.) During an interview following the incident, the patient said nothing about Stewart kicking him. (Miller Dep. 58-60.) Finally, according to Stewart, the only injury that the patient had was a bloody nose and the bloody nose was from being punched by White. (Stewart Dep. 126.)

There were discussions immediately after the incident was over. Drs. Hunter and Fish told Stewart that the situation had been "handled well." (Stewart Dep. 131.) Miller told Stewart that everything looked good and that he did not see a problem. (Id. at 136.)

### Investigation and Subsequent Termination

Jones reported what he saw to Lieutenant Spieles ("Spieles"). (Miller Dep. 75.) Spieles then brought the matter to Miller's attention. (Id.) Miller and Molchan conducted an investigation. (Exhibit J to Stewart Dep.; Molchan Decl. ¶ 5.)

The investigation included statements by Jones, White and Spieles. (Id.) Miller and Molchan also talked to Drs. Hunter and Fish, both of whom confirmed that they saw Stewart kick the restrained patient in the head after the patient no longer presented a physical threat to anyone. (Molchan Decl. ¶ 6.) Following the investigation, Stewart's employment at Grandview was terminated effective March 2, 2011, for the use of excessive force on the patient. (Exhibit M to Stewart Dep.) Stewart was 59 years of age at the time his employment was terminated. (FAC ¶ 13.)

### Discrimination Allegations

Stewart makes several allegations that he believes are of age discrimination. They are as set forth below.

When Stewart talked to Miller about applying for a sergeant's or lieutenant's position, Miller told him that he was looking for younger men with more education, and that, at Stewart's age, Stewart was too old to perform those duties. (Stewart Dep. 18.) Yet, Stewart felt that he had more seniority and more experience than those being considered. (Id. at 20.)

Miller continued to talk to Stewart about Stewart's age. (Id. at 31.) Miller talked to Stewart about how old Stewart was and how he should retire and move on. (Id.) Miller, according to Stewart, said that he wanted "young bulls" with education and not "old guys." (Id. at 39.) Miller testified that he spoke with Stewart about pensions and retirement, but that those were conversations he had with all of his employees. (Miller Dep. 51-53.)

Stewart says he opposed "this" discrimination by discussing it with Miller, Lieutenant Shepard, Lieutenant Alexander and Lieutenant Andy Sullivan ("Sullivan"). (Id. at 45-47.) However, Stewart did not ask Lieutenants Shepard, Alexander or Sullivan to do anything about the alleged age discrimination. (Id. at 48-52.)

According to Stewart, Miller would come into the dispatch center and would make comments about Stewart being too old. (Stewart Dep. 53.) Stewart told Miller that Miller should refrain from saying things like that in front of the "guys." (Id.) Finally, Stewart says that he heard that he was too old from Miller so many times that he heard it in his sleep. (Id. at 27.)

Miller told Stewart that, if Stewart did not complete OPOTA, Stewart "could wave bye-bye to [his] job." (Id. at 37.) Before the OPOTA commencement ceremony, Stewart saw Miller, Molchan and Spieles standing near the entrance doors. (Stewart Aff. ¶ 4.) Stewart's wife says she overheard an officer say, "I see you came to see Stewart graduate." She then heard Miller reply, "yeah, right," sarcastically. (Affidavit of Shirley Stewart ("Shirley Stewart Aff.") ¶ 3 May

20, 2013.) The officer then said, "you didn't think the old guy would make it did you?" (Id.)

Molchan responded, "He's our oldest officer. It's embarrassing." (Id.) An officer then

commented, "It looks like you're stuck with him now. He passed." (Id.) Miller, according to

Stewart's wife, looked at Molchan and replied, "That remains to be seen." (Id.) Molchan then

looked at Miller and repeated, "Yeah, that remains to be seen." (Id.)

At his deposition, Miller was shown a document that he believed looked like something

Grandview HR would have provided. (Miller Dep. 15.) This document shows that, of the twenty-

one (21) Officer IIs employed at Grandview as of February 22, 2011[1], Stewart was the oldest at

59 years of age. (Exhibit 1 to Miller Dep.)

In supervisor's meetings, Miller told his subordinates to "keep a close eye on" Stewart

and to document any policy violations. (Deposition of Richard Andy Sullivan ("Sullivan Dep.")

11 Feb. 7, 2013.) Sullivan, a Lieutenant serving under Miller, was not aware that Miller ever

indicated that Stewart had to go but it seemed to Sullivan like Stewart's "days were numbered."

(Id. at 5, 13.)

The year before Stewart's employment was terminated, Miller promoted some younger

officers. (Id. at 28.) Sullivan was not aware of anybody over 40 years of age being promoted.

(Id.) It seemed to Sullivan that Miller "wanted young people in there as far as the hiring pattern."

(Id. at 18.)

Before Stewart came back to work to be informed of his termination, Miller instructed

officers, including Molchan, Sullivan and Jones, to be present when Miller advised Stewart that

his employment was terminated. (Sullivan Dep. 20.) Miller told Sullivan that Stewart had made a

---

[1]The date of the incident.

threatening statement and there was a possibility of violence. (Id.) Sullivan thought the display of force was unnecessary because he and Stewart were friends and Stewart had never threatened him. (Id. at 22.)

White received no discipline for his actions towards the patient. (Miller Dep. 46.) Stewart was terminated.

Miller testified that he does not know who replaced Stewart after his employment was terminated. (Miller Dep. 35-42.) Based upon Exhibit 1 to Miller's Deposition, there were fifteen (15) Officer IIs hired at Grandview after Stewart's employment was terminated. (Exhibit 1 to Miller Dep.) Of those, three (3) were over age 40. (Id.)

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial.*" Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is

whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## ANALYSIS - AGE DISCRIMINATION

Stewart alleges that Grandview discriminated against him because of his age in violation of the ADEA and Ohio Revised Code. Grandview responds that Stewart cannot establish a prima facie case of age discrimination, and, if he could, he cannot show that the termination of his employment was a pretext for discrimination.

### <u>Relevant Legal Provisions</u>

### Age Discrimination

The ADEA (and Ohio law) prohibits an employer from failing to hire, discharging or discriminating against an individual with respect to her or his compensation or terms, conditions or privileges of employment because of her or his age. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009)(citing 29 U.S.C. § 623(a)(1)). Given the similarity of Ohio and federal age discrimination laws, courts generally apply applicable federal age discrimination law to Ohio

claims. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005). None of the Parties in this case argue otherwise.

A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Id.* Direct evidence is evidence which, if believed, would require the conclusion that unlawful discrimination was at least a motivating factor. If a plaintiff does not have direct evidence of age discrimination, the age discrimination claim is analyzed using the *McDonnell Douglas* burden shifting framework. *Geiger*, 579 F.3d at 622.

In this case, Stewart does not identify or argue that he has presented direct evidence of age discrimination but he does identify alleged circumstantial evidence. Therefore, Stewart's age discrimination claim is analyzed using the *McDonnell Douglas* burden shifting framework.

### *McDonnell Douglas* Burden-Shifting Framework

The *McDonnell Douglas* burden-shifting framework provides an allocation of the burden of production and an order for the presentation of proof in disparate treatment cases. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 659 (6th Cir. 2000)(citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)). The framework is designed to "sharpen the inquiry to a level of specificity which best allows the fact-finder to resolve the ultimate question: whether the plaintiff established by a preponderance of the evidence that the defendant intentionally discriminated against her." *Cline*, 206 F.3d at 660(citing *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

Under the *McDonnell Douglas* burden shifting framework, a plaintiff must first identify evidence that satisfies a prima facie case of discrimination. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)(citing *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 405 (6th Cir.

2001)). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason or reasons for its actions. *Id.* If the employer does so, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *Id.* The ultimate burden of persuasion remains at all times with the plaintiff. *Id.*

On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine issue of material fact at each stage of the *McDonnell Douglas* analysis. *Clay*, 501 F.3d at 703. However, "[c]onclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale*, 519 F.3d at 605.

Prima Facie Case

A prima facie case of age discrimination is made by showing the following elements: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

One option for the fourth element of a prima facie case of age discrimination is to show that the plaintiff was replaced by a substantially younger person. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008). A person is replaced only when another employee is hired or reassigned to perform that person's duties, and is not replaced when that person's work is redistributed among other existing employees. *Id.* at 522. Finally, age differences of ten or more years have generally been held to be sufficiently substantial to meet this requirement. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).

The other option for the fourth element of a prima facie case of age discrimination is to

-12-

show that the plaintiff was treated differently than similarly-situated, non-protected employees. *Zeidler*, 516 F.3d at 521-22. To be deemed similarly situated, the individuals with whom the plaintiff seeks to compare his treatment must have been the same in all relevant aspects. *Bobo v. United Parcel Service*, 665 F.3d 741, 751 (6th Cir. 2012). The court is to make a determination as to what are the relevant aspects. *Id.*

Legitimate, Non-Discriminatory Reason

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment decision. *Arendale*, 519 F.3d at 603. If the employer meets this burden of production, the burden shifts back to the plaintiff to show that the legitimate, non-discriminatory reason given is a pretext for discrimination.

Pretext

The plaintiff may show that the legitimate non-discriminatory reason given by the employer is a pretext for discrimination by showing that the reason given (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Clay v. United Parcel Service*, 501 F.3d 695, 704 (6th Cir. 2007)(citing *Johnson v Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)). A reason cannot be a pretext for discrimination unless it is shown that the reason is both false and that discrimination was the real reason. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)(citing *St. Mary's Honor Center*, 509 U.S. 502). Finally, to show pretext, an employee may not rely upon her or his prima facie evidence, but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other*

-13-

*grounds by Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009).

Consideration of pretext focuses on the defendant's beliefs and not on the plaintiff's own perceptions. *Scott v. Thomas & King, Inc.*, No. 3:09-CV-147, 2010 WL 2630166 at *8 (S.D. Ohio June 28, 2010.) Self-serving statements by the plaintiff that he or she believes that he or she was discriminated against because of age are not enough. *Id.*

The reasonableness of an employer's decision may be considered to the extent that such a question sheds light on whether the employer's proffered reason for the employment decision was its actual motivation. *Wexler*, 317 F.3d at 576 (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). If the employer demonstrates that its actions, while perhaps "mistaken, foolish, trivial, or baseless," were not taken with discriminatory intent, the employer arguably lacks the discriminatory intent which is the focus of a discrimination suit. *Clay*, 501 F.3d at 715(quoting *Smith*, 155 F.3d at 806).

To that end, courts apply the "honest belief" rule. Under the Sixth Circuit's "honest belief" rule, an employer may avoid a finding that its claimed legitimate, non-discriminatory reason is a pretext for discrimination if the employer establishes that it reasonably relied upon the particularized facts that were before it at the time the decision was made. *Brooks v. Davey Tree Expert Company*, 478 F. App'x 934, 943 (6th Cir. 2012.) However, if the employee produces sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision, the employer's decisional process may be "unworthy of credence" and any reliance on such a process is not honestly held. *Id.*

## Analysis

### Prima Facie Case

-14-

Stewart was 59 years of age when his employment was terminated. Also, there is evidence that Stewart was qualified for the Officer II position and no evidence to the contrary. Finally, termination of Stewart's employment is an adverse employment action. Therefore, Stewart has satisfied three of the four elements of a prima facie case of age discrimination. The analysis turns to the fourth element.

Stewart first argues that he was replaced by a substantially younger person. Grandview responds that there is no evidence that Stewart was replaced by substantially younger person.

Miller was unwilling or unable to testify as to who, if anyone, was hired to replace Stewart. However, the record evidence indicates there were fifteen (15) Officer IIs hired at Grandview after Stewart's employment was terminated. Of those, twelve (12) were under age 40. Thus, there are genuine issues of material fact as to whether Stewart was replaced by a substantially younger person.

Stewart also argues that he was treated differently than a similarly-situated employee. He argues that he and White were similarly situated, including that both engaged in conduct of comparable seriousness, and his employment was terminated while White's was not.

However, this argument is unavailing. While both may have been engaged in a fight with the patient, there is no evidence that White used excessive force on the patient. Thus, based upon the evidence identified, Stewart and White were not similarly situated because they did not engaged in conduct of comparable seriousness.

Finally, Stewart identifies additional evidence from which he says a jury could make an inference of age discrimination. The additional evidence that Stewart identifies is Miller and Molchan's comments and actions to him about his age, that he was 59 years old when his

employment was terminated, and that Miller had a pattern of retaining and hiring much younger Officer IIs.

For purposes of an evaluation using the *McDonnell Douglas* framework, binding legal precedence identifies only two ways to satisfy the fourth element of a prima facie case of age discrimination: one is to show that the plaintiff was replaced by a substantially younger person and the other is to show that the plaintiff was treated differently than similarly-situated, non-protected employees. Stewart has presented argument regarding both of these considerations but has not identified a legal basis for any additional considerations. Therefore, what Stewart terms additional evidence from which a jury could make an inference of age discrimination will not be considered for purposes of establishing a prime facie case.

Stewart has satisfied the first three elements of prima facie case of age discrimination and there are genuine issues of material fact regarding one possibility, being replaced by a substantially younger person, for showing the other element. Therefore, the *McDonnell Douglas* analysis proceeds to the next step.

### Legitimate, Non-Discriminatory Reason

The next step in the *McDonnell Douglas* burden shifting analysis is for Grandview to articulate a legitimate, non-discriminatory reason for terminating Stewart's employment. This Grandview has done.

Grandview says it terminated Stewart's employment due to the use of excessive force on a patient. This is a legitimate, non-discriminatory reason.

### Pretext

The next step in the analysis is to determine if Stewart has presented evidence that

Grandview's legitimate, non-discriminatory reason is a pretext for discrimination. This can be done in any one of three ways: by showing that Grandview's legitimate non-discriminatory reason has no basis in fact, (2) did not actually motivate Grandview's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Stewart has presented argument regarding all three.

### No Basis In Fact

Stewart argues that Grandview's legitimate, non-discriminatory reason for his termination never happened. On one hand, Grandview's investigation resulted in the conclusion that Stewart kicked the patient who was restrained and lying on the exam room floor. On the other hand, Stewart has denied kicking the patient and has identified other evidence from which a reasonable juror could conclude that he did not kick the patient. Thus, there are genuine issues of material fact regarding whether Stewart actually kicked the patient.

### Did Not Actually Motivate

Stewart next argues that the evidence "aptly" demonstrates that his age was more likely the motivator for the termination of his employment. To use this method of showing pretext, Stewart must admit to the factual basis underlying Grandview's legitimate, non-discriminatory reason and that Grandview's legitimate, non-discriminatory reason could motivate dismissal. *See Manzer*, 29 F.3d at 1084. Stewart attempts to indict the credibility of Grandview's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by Grandview.

The evidence identified by Stewart includes: the age of the Officer IIs hired by Grandview after Miller became Chief and after Stewart's employment was terminated; Miller's alleged age-

-17-

related comments and remarks; Miller and Molchan's alleged shared expression of desire to get rid of Stewart; Miller's alleged assurance to Stewart that his actions were good; Miller's alleged refusal to promote Stewart because of his age; and Miller's alleged refusal to give White a verbal reprimand for causing injuries to the patient. All of this is evidence which, if believed by the jury, could lead to a reasonable conclusion that Grandview's legitimate, non-discriminatory reason was a pretext for discrimination.

Insufficient To Motivate

Stewart can also show that Grandview's legitimate, non-discriminatory reason was a pretext for discrimination by showing that Grandview's reason was insufficient to warrant termination. Stewart attempts to make this showing by arguing that other employees not in the protected class were not fired even though they engaged in similar conduct.

Specifically, Stewart argues that White engaged in similar conduct with the patient but was not disciplined. However, as more fully set forth above, there is not evidence that White engaged in similar conduct. Therefore, there are no genuine issues of material fact and Stewart has not identified evidence from which a reasonable juror could conclude that Grandview's legitimate, non-discriminatory reason was insufficient to warrant the termination of Stewart's employment.

Application of "Honest Belief" Rule

Grandview may avoid a finding that its claimed legitimate, non-discriminatory reason is a pretext for discrimination if it establishes that it reasonably relied upon the particularized facts that were before it at the time the decision was made. Grandview has produced evidence that Miller reasonably relied upon the investigation of the incident when he terminated Stewart's

-18-

employment. The investigation revealed that Stewart used excessive force on the patient. Further, Stewart has not identified sufficient evidence to establish that Grandview failed to make a reasonably informed and considered decision. Therefore, there are no genuine issues of material fact and Grandview's legitimate, non-discriminatory reason for terminating Stewart's employment is not a pretext for discrimination.

### Conclusion On Age Discrimination

There is a genuine issue of material fact as to whether Stewart can show a prima facie case of age discrimination. However, Grandview has articulated a legitimate, non-discriminatory reason for terminating Stewart's employment. Further, based upon an application of the "honest belief" rule, Stewart has not shown that Grandview's legitimate, non-discriminatory reason is a pretext for discrimination. Therefore, there are no genuine issues of material fact and Grandview is entitled to judgment as a matter of law on Stewart's age discrimination claim.

### ANALYSIS - RETALIATION

Stewart alleges that Grandview retaliated against him because of his age in violation of the ADEA and the Ohio Revised Code. Grandview responds that Stewart cannot establish a prima facie case of retaliation, and, if he could, he cannot show that the termination of his employment was a pretext for discrimination.

### Relevant Legal Provisions

The ADEA and Ohio law prohibit employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d); Ohio Rev. Code § 4112.02(I). As with age discrimination claims, given the similarity of Ohio and federal age discrimination laws, courts generally apply applicable federal age retaliation law to Ohio age retaliation claims.

-19-

*Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).

As with age discrimination claims, plaintiff may establish a violation of the ADEA due to retaliation by either direct or circumstantial evidence. *Id.* Direct evidence is evidence which, if believed, would require the conclusion that unlawful discrimination was at least a motivating factor. If a plaintiff does not have direct evidence of retaliation, the retaliation claim is analyzed using the *McDonnell Douglas* burden shifting framework. *Geiger*, 579 F.3d at 622.

In this case, Stewart has not identified direct evidence that he was retaliated against due to his age. Therefore, his retaliation claim will be analyzed using the *McDonnell Douglas* burden-shifting framework which is more fully set forth above and need not be repeated here.

To establish a prima facie case of retaliation, Stewart must identify evidence that: (1) he engaged in protected activity; (2) Grandview was aware that Stewart had engaged in that activity; (3) Grandview took an adverse employment action; and there was a causal connection between the protected activity and the adverse action. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). An employee may not, however, invoke ADEA protection against retaliation by making vague charges of discrimination, particularly in an internal letter or memorandum. *Fox v. Eagle Distributing Co., Inc*. 510 F.3d 587, 591 (6th Cir. 2007).

## Analysis

Grandview only argues, for purposes of this Motion for Summary Judgment, that Stewart cannot establish that he engaged in protected activity. Thus, only this element of a prima facie case will be considered.

Stewart argues that he engaged in protected activity. One of the alleged protected activities identified by Stewart is his feeling that he "didn't find it amusing or funny, you know." Stewart

-20-

was referring to alleged comments made by Miller in the dispatch center. This "feeling," alone, does not even reach a vague discrimination charge.

The other alleged protected activity identified by Stewart is telling Miller that, "I didn't think it was right that, you know, every time something come up, you are always throwing my age at me, that I was too old for any type of promotion or anything going - - anything coming as far as promotions." However, there is no evidence that Stewart never actually applied for a promotion. Further, even if Stewart had actually applied for a promotion, this is one of those vague charges that does not invoke the protection of the ADEA.

Grandview also argues that, even if Stewart could establish a prima facie case, he cannot establish pretext. However, since Stewart has not identified evidence that establishes a prima facie case of retaliation, whether he can establish pretext need not and will not be considered.

### ANALYSIS - INFLICTION OF EMOTIONAL DISTRESS

Grandview argues that there is no evidence that it engaged in any outrageous conduct so Stewart's intentional infliction of emotional distress claim fails. Stewart responds that his emotional distress is due to being terminated and discriminated against by Miller, Molchan and Grandview.

To recover for infliction of emotional distress, a plaintiff must prove that: (1) the actor either intended to cause emotional distress or know or should have known that the actions taken would result in serious emotional distress; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of plaintiff's injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person can

be expected to endure. *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983). For example, termination of employment would not reach the level of "extreme and outrageous" without proof of "something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

In this case, Grandview argues that there are no facts to support Stewart's contention that Grandview engaged in any outrageous conduct. Stewart responds that there is "something more."

The "something more" alleged by Stewart is a deliberate attempt by his police chief and captain to get rid of him because of his age. In carrying this out, Miller allegedly ridiculed Stewart about his age for months and ridiculed him in front of fellow police officers. Also, Miller allegedly announced at meetings that he wanted everyone to watch Stewart. Molchan allegedly described Stewart as an "embarrassment" to other officers.

The "ridicule" that Stewart identifies is his own self-serving opinion. Further, announcing that Miller wanted everyone to watch Stewart is certainly not action that goes beyond all bounds of decency. Finally, if true, describing Stewart as an embarrassment to other officers is not an action that goes beyond all bounds of decency.

Stewart has not identified evidence that Grandview engaged in any outrageous conduct, conduct that goes beyond all bounds of decency. Therefore, there are no genuine issues of material fact and Grandview is entitled to judgment as a matter of law on Stewart's infliction of emotional distress claim.

### ANALYSIS - PUNITIVE DAMAGES

Neither Party offers any argument regarding Stewart's punitive-damages claim other than Grandview arguing that all of Stewart's claims should be dismissed and Stewart arguing that none of them should be dismissed. None of Stewart's other claims remain to be adjudicated and his

punitive-damages claim cannot stand alone. Therefore, there are no genuine issues of material fact and Stewart is entitled to judgment as a matter of law on Stewart's punitive-damages claim.

## CONCLUSION

There is a genuine issue of material fact as to whether Stewart can show a prima facie case of age discrimination. However, due to application of the "honest belief" rule, Stewart has not shown that Grandview's legitimate, non-discriminatory reason for terminating his employment was a pretext for discrimination. Therefore, there are no genuine issues of material fact and Grandview is entitled to judgment as a matter of law on Stewart's age discrimination claim.

Stewart has not identified evidence from which a reasonable juror could conclude that Grandview retaliated against him. Therefore, there are no genuine issues of material fact and Grandview is entitled to judgment as a matter of law on Stewart's retaliation claim.

Stewart has not identified evidence from which a reasonable juror could conclude that Grandview engaged in any outrageous conduct, conduct that goes beyond all bounds of decency. Therefore, there are no genuine issues of material fact and Grandview is entitled to judgment as a matter of law on Stewart's infliction of emotional distress claim.

Finally, since none of Stewart's other claims remain to be adjudicated, Stewart's punitive-damages claim is no longer viable. In sum, Defendants Kettering's and Grandview's Motion for Summary Judgment (Doc. #25) is GRANTED. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Twentieth Day of June, 2013.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

-24-